UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT F.,

                  Plaintiff,                      **DECISION AND ORDER**

     v.
                                    6:23-CV-06105 EAW

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Robert F. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 11), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on April 23, 2020.  (Dkt. 6 at 20, 203-212, 216-22).[1]  In his applications, Plaintiff alleged disability beginning May 16, 2018, due to physical deconditioning, Type 2 diabetes mellitus, diabetic nephropathy, postural dizziness, and near syncope.  (*Id.* at 20, 204, 211, 216).  Plaintiff's applications were initially denied on November 10, 2020.  (*Id.* at 20, 57, 58).  An online video hearing was held before administrative law judge ("ALJ") Elizabeth W. Koennecke on November 17, 2021.  (*Id.* at 20, 36-).  On January 27, 2022, the ALJ issued an unfavorable decision. (*Id.* at 20-30).  Plaintiff requested Appeals Council review; his request was denied on December 7, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-12).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.     **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2023. (Dkt. 6 at 22). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 16, 2018, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of obesity. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of asthma, obstructive sleep apnea, migraine headaches, vertigo, and hypertension were non-severe. (*Id.* at 23-24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 23). The ALJ particularly considered Plaintiff's obesity in reaching her conclusion. (*Id.* at 23-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that Plaintiff must avoid concentrated exposure to unprotected heights or hazards. (*Id.* at 24).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 29).

At step five, the ALJ relied on the Medical-Vocational Guidelines ("the grids") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 29-30). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 30).

II.   **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ's decision and RFC determination are not supported by substantial evidence because the ALJ: (1) erred in not finding Plaintiff's pulmonary condition to be a severe impairment; (2) did not properly evaluate the medical opinion evidence of record in formulating the RFC; and (3) failed to call a vocational expert ("VE"), as required. (Dkt. 10-1 at 12-29).

A.   **Step Two Severity Determination**

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "The following are examples of 'basic work activities': 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately

to supervision, co-workers and usual work situations.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted).

"The claimant bears the burden of presenting evidence establishing severity." *Id.* Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *see also McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."); *O'Connor v. Saul*, No. 1:18-CV-00740 CJS, 2020 WL 1242408, at *3 (W.D.N.Y. Mar. 16, 2020) ("The standard at step two is quite low.").  However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)) (alteration in original); *Lugo Rodriguez v. Berryhill*, No. 3:17-CV-00093 (VLB), 2018 WL 1135330, at *4 (D. Conn. Mar. 2, 2018) ("In other words, any claim in which the medical evidence establishes more than a 'slight abnormality' with 'no

more than a minimal effect on an individual's ability to work' should be determined 'severe.'" (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987))).

Here, at step two, the ALJ assessed several non-severe impairments. In explaining his severity determination, the ALJ stated:

> [Plaintiff] reported [his] asthma to be mild and not much of a problem (Exhibit 3F, page 23). A follow-up treatment note indicated a diagnosis of asthma without complication, controlled with medication (Exhibit 4F, page 24). Pulmonary function tests revealed mild restrictive lung process with significant improvement after bronchodilator, normal diffusion capacity, and no evidence of upper airway obstruction (Exhibit 4F, page 31; 8F, page 287). Thereafter, a follow-up pulmonary function test showed only mild obstruction. [Plaintiff] denied frequent use of rescue inhaler (Exhibit 15F). Lastly, a September 2021, chest x-ray noted only mild linear atelectasis or scarring in the lung bases (Exhibit 13F, page 7). A contemporaneous exam revealed no issues with asthma, no shortness of breath with walking, and only mild mixed obstructive and restrictive lung process on spirometry with significant improvement after bronchodilators (Exhibit 13F, page 9).
>
> Regarding sleep apnea, treatment records consistently noted that [Plaintiff's] symptoms were controlled with CPAP treatment. In addition, he denied daytime fatigue (Exhibit 4F, page 20; 13F, page 9; Exhibit 15F). Furthermore, [Plaintiff] consistently reported that his headaches and dizziness were well controlled with medication (Exhibit 5F, pages 1-2; 6F, page 6; 13F, page 9). Despite complaints of dizziness, he had multiple tests such as MRI of the brain, echocardiogram, stress test, CT of chest, EEG, and carotid ultrasounds, which were all benign (Exhibit 8F, page 98). Notably, by October 2018, [Plaintiff] reported improved syncopal episodes, and he had a negative tilt table test and normal Holter monitor findings. Moreover, [Plaintiff] denied fatigue, weakness, chest pain, syncope, and shortness of breath (Exhibit 3F, pages 10-11, 46; 4F, page 18; 8F, page 113). Lastly, his blood pressure was controlled with medication and he took blood thinner with no complications (Exhibit 20F).

(Dkt. 6 at 23).

Plaintiff argues that the ALJ overlooked the many instances in the record where Plaintiff complained of shortness of breath and erroneously concluded that Plaintiff's respiratory symptoms were attributable to obesity, rather than a pulmonary condition. He

also argues that the ALJ ignored relevant medical opinion evidence in finding Plaintiff's pulmonary impairment non-severe and that the error was not harmless because it resulted in the ALJ failing to include environmental limitations in the RFC.  The Court disagrees.

As an initial matter, the ALJ expressly considered Plaintiff's shortness of breath throughout her decision so any suggestion that the symptom was overlooked is meritless. The ALJ referenced Plaintiff's testimony regarding shortness of breath on exertion being a reason for his inability to work, (Dkt. 6 at 24), as well as noting Plaintiff's complaints of shortness of breath immediately following his pulmonary embolism diagnosis in 2017 (*id.* at 25).   Alternatively, the ALJ noted multiple instances in the record where Plaintiff reported no chest pain or shortness of breath on exertion.  (*Id.* at 26).  To the extent that the record contained conflicting evidence regarding Plaintiff's complaints of shortness of breath, it is the ALJ's duty to resolve conflicts among evidence in the record, and not the role of the Court.  *See Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) (explaining that "because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent"); *see also Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but

we defer to the ALJ's disability determination when it is supported by substantial evidence."). The Court finds no error in the ALJ's resolution of this potential conflict.

Plaintiff also argues that the ALJ's conclusion that Plaintiff's respiratory symptoms were the result of his obesity, and not an independent severe condition, was not supported by the medical opinion evidence. Although Plaintiff cites to medical evidence that supports his contention of severity, the medical evidence also contains evidence to the contrary. For example, Plaintiff cites to the report from consultative examiner Justine Magurno, M.D., who noted that Plaintiff appeared to be short of breath throughout the examination. (Dkt. 6 at 1055). Dr. Magurno opined that Plaintiff was capable of no more than minimal levels of physical exertion and should avoid dust, fumes, and other known lung irritants. (*Id.* at 1057). Plaintiff's primary care physician, Angel Malavet, M.D., indicated on June 25, 2020, that Plaintiff was positive for shortness of breath and dyspnea on exertion. (*Id* at 1093). Nurse Practitioner Diana Lougen, NP, also noted shortness of breath as a diagnosis. (*Id.* at 1212). And a June 2019 treatment record from primary care physician's assistant Natalie Aiello noted that Plaintiff has poor exercise stamina due to dizziness and shortness of breath with doing activities of daily living. (*Id.* at 519). In addition, the two non-examining state agency consultants, A. Saaed, M.D., and R. Dickerson, M.D., both identified "other disorders of the respiratory system" to be a secondary severe condition. (*Id.* at 79, 108).

But other information contained in records from those same providers support the ALJ's conclusions regarding the non-severity of Plaintiff's pulmonary limitations. For example, Dr. Magurno's examination reflected normal findings of Plaintiff's chest and

lungs, (Dkt. 6 at 1055), and PA Aiello's examination records document benign findings in a CT scan of Plaintiff's chest (*id.* at 373).  NP Lougen's records reflected that that the "[e]tiology of [shortness of breath] could be due to weight and deconditioning, history of COVID 19 infection last fall, and asthma."  (*Id.* at 1212).

As noted, it is within the purview of the ALJ to resolve such conflicts.  *See Micheli*, 501 F. App'x at 29-30 (explaining that "because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent").

Moreover, even if the ALJ's failure to deem Plaintiff's pulmonary condition to be severe was error, any error would be considered harmless if the ALJ continued on to consider the non-severe impairment at the subsequent steps of the analysis.  *Vilma Seranno S. v. Kijakazi*, No. 3:22-CV-00214 (KAD), 2023 WL 2743283, at *4 (D. Conn. Mar. 31, 2023).  Indeed, where a particular medically determinable impairment is deemed non-severe, it is well-settled that an ALJ must consider both Plaintiff's severe and non-severe impairments when assessing the RFC.  *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("A RFC determination must account for limitations imposed by both severe and nonsevere impairments."); *see also Grant v. Saul*, No. 3:18-CV-00261 (KAD), 2020 WL 1307106, at *6 (D. Conn. Mar. 18, 2020) (explaining that an ALJ is required to consider non-severe impairments when fashioning the RFC).  However, where there is "no discernible basis for the court to conclude that [the] ALJ . . . factored [the non-severe

impairments] . . . into her ultimate residual functional capacity determination," the error is not harmless. *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014).

Here, it is clear that the ALJ did consider Plaintiff's shortness of breath when assessing the RFC. (Dkt. 6 at 28-29) ("With that, the undersigned acknowledges that the claimant has a diagnosis of morbid obesity with associated shortness of breath and deconditioning, and needs treatment to manage symptoms. Despite the many inconsistencies in the record regarding the claimant's functional limitations, the undersigned has given the claimant the benefit of the doubt and limited him to the above noted residual functional capacity."). As a result, it matters not whether Plaintiff's pulmonary limitations were deemed severe at step two. Further, as explained in more detail below, the ALJ considered the medical opinion evidence that discussed Plaintiff's respiratory limitations and explained his reasons for finding such opinions persuasive or non-persuasive. Remand is accordingly not warranted on this basis.

**B**.   **Assessment of Medical Opinions and RFC Determination**

Plaintiff's second argument is that the ALJ did not properly evaluate the opinion evidence from Dr. Magurno, Dr. Malavet, and PA Aiello, and discounted Plaintiff's limitations in crafting an RFC that omitted restrictions to exposure to respiratory irritants.

At the outset, the Court notes that in deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical

sources cited in h[er] decision," *id.*, an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).   At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).   Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.   *Id.*   Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other

factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at §§ 404.1520c(b), 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical

source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors.  *Id*.

### 1.  Dr. Malavet

The Court turns first to the ALJ's assessment of Dr. Malavet's opinions.

In January of 2019, Dr. Malavet prepared a medical opinion statement.  (Dkt. 6 at 1218-19).  Dr. Malavet identified Plaintiff's pulmonary embolism as a medical condition with a good prognosis.  (*Id.* at 1218).  He opined that Plaintiff is very limited in walking, standing, and in the use of stairs or other climbing, and moderately limited in lifting, carrying, pushing, pulling, and bending.  (*Id.* at 1219).  Dr. Malavet concluded that Plaintiff would be unable to engage in competitive employment because he currently could not comply with industry standards.  (*Id.*).  Dr. Malavet recommended physical therapy.  (*Id.*).

The ALJ explained her reasons for finding the opinion to be not persuasive as follows:

> The opinion is not persuasive as it is based mostly on review of [Plaintiff's] complaints.  It is, however, mostly consistent with sedentary work.  Notably, there is no evidence of mental limitations in the record, and contemporaneous treatment notes do not support disabling symptoms.  For example, Dr. Malavet noted that [Plaintiff] suffered from deconditioning and required physical therapy.  Moreover, he appeared in no respiratory distress and [Plaintiff] denied shortness of breath (Exhibit 9F, pages 8, 11).  Opinions regarding work functioning ability or competitive employment are vocational and beyond the purview of the provider.

(Dkt. 6 at 26-27).

On June 28, 2020, Dr. Malavet completed another similar medical opinion statement that indicated that Plaintiff is very limited in walking, standing, and stair use, and would be very limited in an ability to function in a work setting at a consistent pace.  (*Id.* at 1215).

Dr. Malavet opined that Plaintiff is moderately limited in lifting, carrying, pushing, pulling, and bending. (*Id.*). He opined that Plaintiff's conditions would prohibit him from working in a competitive environment for at least 80 hours per month. (*Id.*). In again concluding the opinion was not persuasive, the ALJ stated:

> The opinion is not persuasive even though it is mostly consistent with sedentary work. Notably, one month prior to the opinion, Dr. Malavet indicated that [Plaintiff's] symptoms were stable, and absent chest pain or shortness of breath on exertion (Exhibit 16F, age 4). Further, in December 2020, Dr. Malavet again noted that [Plaintiff] had normal physical exam findings, absent chest pain and shortness of breath on exertion (Exhibit 16F, page 8). Again, the only constant was [Plaintiff's] morbid obesity and deconditioning.

(*Id.* at 27).

In March of 2021, Dr. Malavet completed an additional medical assessment statement. In it, he indicated diagnoses of pulmonary hypertension due to pulmonary embolism, diabetes mellitus, and obesity. (*Id.* at 1320). He opined that Plaintiff could occasionally lift 5 and 10 pounds but never more than that. (*Id.*). He also opined that Plaintiff could sit for 8 hours in a workday but stand for only 20 minutes and walk for 15 minutes. (*Id.*). His use of his hands was not affected. (*Id.* at 1321). Dr. Malavet indicated that Plaintiff could not tolerate chemicals, humidity, dust, temperature extremes, fumes, and vibrations due to shortness of breath with mild exertion. (*Id.*). He opined that Plaintiff is constantly off-task and would be absent from work more than four days each month. (*Id.* at 1322).

In finding this opinion from Dr. Malavet similarly unpersuasive, the ALJ explained:

> The opinion is not persuasive. Again, there is no evidence that [Plaintiff's] respiratory issues are caused by environmental factors, as detailed in finding 3. Further, there is no evidence or basis to find occasional limits to hazards

and noise, and off-task/missed days is speculative. (Exhibit 9F, page 13). Despite the noted limitations, one mo[n]th prior in February 2021, [Plaintiff] denied chest pain, palpitations, edema, and reported that he was not physically active out of choice. On exam, he was alert and oriented with no focal deficits and otherwise normal findings. [Plaintiff] was stable from a cardiac standpoint with controlled blood pressure and no anginal symptoms. [Plaintiff] was encouraged to exercise 30 minutes a day (Exhibit 20F).

In addressing the issue whether the off-task or absenteeism opinions are supported we must look to 20 CFR 404.1520c and 416.920c, which require that in addition to noting the treating relationship and other factors, we are required to assess the supportability of the medical opinions: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) the more persuasive the medical opinions will be." In the absence of any supporting explanations on the face of these check-box forms, we are required to look to the objective medical evidence for support, and in this case, this support is lacking.

(*Id.* at 27-28).

The ALJ's assessment of Dr. Malavet's opinions was proper and well-supported by the evidence. As required by the regulations applicable to Plaintiff's claim, the ALJ considered both the consistency and the supportability of Dr. Malavet's opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ identified specific information contained in Dr. Malavet's treatment records which appear to contradict the limitations advanced in his opinions. In addition, it was not error for the ALJ to discount Dr. Malavet's opinion as to whether Plaintiff's respiratory issues are caused by environmental factors without evidence to support those conclusions, nor was it impermissible for the ALJ to consider the fact that certain opinions were contained in a check-box form with no additional explanation to provide insight into the basis for the opinions. *See Goodale v. Astrue*, 32 F.

Supp. 3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a "check box" form that counsel had provided).

Similarly, the ALJ's consideration of a medical recommendation for exercise is not improper. *See John B. v. Kijakazi*, No. 3:22-CV-523 (SRU), 2023 WL 6210917, at *11 (D. Conn. Sept. 25, 2023) ("In the absence of other evidence in the record, the ALJ could reasonably conclude that a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations. . . . On this record, it was not unreasonable for the ALJ to find that the plaintiff's physicians' repeated recommendations for daily exercise were inconsistent with [plaintiff's] contention that he was incapable of work entailing light exertion." (quotation and citation omitted)); *Natalie S. v. Kijakazi*, No. 5:21-CV-24 (GLS/DJS), 2022 WL 4290665, at *5 (N.D.N.Y. May 13, 2022) (holding that ALJ may properly consider recommendations for exercise because "[a] recommendation for exercise presumably represents a medical judgment that the individual is capable of at least that much exercise" and "[a]s such, it is appropriate for the ALJ to evaluate the extent to which Plaintiff's subjective complaints are inconsistent with her recommended medical treatment."), *adopted*, No. 5:21-CV-24 (GLS/DJS), 2022 WL 3273239 (N.D.N.Y. Aug. 10, 2022).  And finally, as noted by the ALJ, Plaintiff's ability to obtain employment is an issue reserved to the Commissioner and the ALJ was free to discount those portions of Dr. Malavet's opinions.  *See Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 WL 195342, at *2 (W.D.N.Y. Jan. 20, 2021) ("If an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the

Commissioner and to that extent is not considered a medical opinion.").  For all of these reasons, the Court finds the assessment of Dr. Malavet's opinions appropriate.

### 2.  Dr. Magurno

Plaintiff also challenges the ALJ's assessment of the opinion from Dr. Magurno, who completed an internal medicine consultative examination on November 3, 2020.  (Dkt. 6 at 1053-1057).  Dr. Magurno's report reflected Plaintiff's complaints of difficulties breathing, which Plaintiff indicated began after he developed blood clots in his lung in 2017.  (*Id.* at 1053).  Plaintiff also advised Dr. Magurno that he can walk less than one block and has to stop halfway down a flight of stairs to catch his breath.  (*Id.*).  But an examination of Plaintiff's chest and lungs reflected normal findings.  (*Id.* at 1055).  Dr. Magurno concluded that Plaintiff should have "no more than minimal levels of physical exertion" and "should avoid dust, fumes, and other known lung irritants."  (*Id.* at 1057).

The ALJ found Dr. Magurno's opinion generally persuasive and explained her reasoning as follows:

> The opinion is generally persuasive as Dr. Magurno examined [Plaintiff] and has a specialty.  Although the opinion is vague and fails to provide a function-by-function assessment, it is generally consistent with sedentary work.  With that, the record does not support respiratory irritants as detailed in finding 3 above.  [(]Exhibit 3F, page 23; Exhibit 4F, pages 24, 31; 8F, page 287; Exhibit 13F, pages 7, 9; Exhibit 15F).  The record supports respiratory limitations associated with obesity and deconditioning, not any environmental factors.

(*Id.* at 26).

The Court finds the ALJ's assessment of Dr. Magurno's opinion to be proper and well-supported by the record.  The ALJ appropriately considered the fact that Dr. Magurno conducted an examination of Plaintiff and that this is her specialty.  The ALJ noted that

portions of the opinion are vague, but considered the opinion's consistency with an RFC for sedentary work, as well as with the severity determination. The ALJ adequately explained the basis for her decision not to incorporate functional restrictions relating to respiratory irritants into the RFC. As with Plaintiff's previous arguments, they largely amount to disagreement with the ALJ conclusions. As noted, it is the role of the ALJ to resolve such conflicts. The Court cannot say that the ALJ's decision is unsupported by substantial evidence.

### 3.  PA Aiello

Finally, Plaintiff challenges that ALJ's assessment of the opinion of PA Aiello. On June 26, 2019, PA Aiello competed a medical assessment form. (Dkt. 6 at 1216-17). In it, she listed Plaintiff's medical conditions as pulmonary embolism, postural dizziness with near syncope, and asthma. (*Id.* at 1216). She opined that Plaintiff is very limited in walking, standing, pushing, pulling, bending, and using stairs or other climbing. (*Id.* at 1217). She opined that Plaintiff has limitations that prohibit him from working in a competitive employment and the restrictions are expected to last for greater than 12 months. (*Id.*). The ALJ explained her assessment of PA Aiello's opinion as follows:

> The opinion is not persuasive as it is based mostly on review of [Plaintiff's] complaints. However, it is mostly consistent with sedentary work. Notably, there is no evidence of mental limitations in the record, and contemporaneous treatment notes do not support disabling symptoms. For example, in April 2019, [Plaintiff] reported doing well, and he denied fatigue, weakness, chest pain and shortness of breath (Exhibit 9F, page 16). One month after the opinion in July 2019, [Plaintiff] reported that he was doing well, and on exam, he had normal extremities, with no focal findings or movement

disorder.    The  only  constant  was  [Plaintiff's]  morbid  obesity  and

deconditioning.

(*Id.* at 27).

Much like the previous opinions, the Court finds no error in the ALJ's assessment

of PA Aiello's opinions.  The ALJ may consider that an opinion is derived mainly from

information provided by Plaintiff in deciding how persuasive she finds the opinion.  *See*

*Andrew S. v. Comm'r of Soc. Sec.*, No. 21-CV-6565MWP, 2024 WL 989705, at *7

(W.D.N.Y. Mar. 7, 2024) ("[A]lthough an ALJ 'cannot lawfully reject a medical source's

opinion solely because it relies on subjective complaints,' he or she 'may assign a treating

source's  opinion  little  weight  if  it  is  based  on  a  claimant's  questionable,  subjective

complaints.'" (quoting *Tomczak v. Comm'r of Soc. Sec.*, 2019 WL 2059679, *1 (W.D.N.Y.

2019))).  It was also appropriate for the ALJ to address the lack of objective evidence

supporting the limitations alleged by Plaintiff.  *See Marozzi v. Berryhill*, 6:17-CV-6864-

MAT, 2019 WL 497629, at *5 (W.D.N.Y. Feb. 8, 2019) (holding that ALJ properly

considered  lack  of  objective  evidence  supporting  treating  physicians'  opinions  when

weighing those opinions).  And as with the opinions of Dr. Malavet and Dr. Magurno, the

ALJ identified specific information from the administrative record that was inconsistent

with the limitations in PA Aiello's opinion to explain her reasons for not finding the

opinion more persuasive.

In sum, the ALJ adequately explained the reasons for her assessment of the medical

opinions, including considering supportability and consistency.  As a result, the Court finds

that the ALJ's RFC finding was grounded in and supported by the evidence of record, and that there is no basis to disturb the ALJ's conclusions.

### C.    **Grid Rules**

Plaintiff's last argument is premised on the success of his previous arguments. Specifically, Plaintiff contends that, because the RFC should have contained non-exertional limitations as a result of his pulmonary conditions, the ALJ was required to rely on the testimony of a vocational expert, rather than the grids, in concluding that Plaintiff can perform certain jobs.

"Generally speaking, if a claimant suffers only from exertional impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids." *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996). "If, however, [the claimant] 'suffer[ed] from additional "nonexertional" impairments, the grid rules may not be controlling' and 'the guidelines c[ould] not provide the exclusive framework for making a disability determination.'" *Id*. at 39 (quoting *Bapp v. Bowen,* 802 F.2d 601, 604-05 (2d Cir. 1986)) (alterations in original). Specifically, "[i]f a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert." *Petersen v. Astrue*, 2 F. Supp. 3d 223, 239 (N.D.N.Y. 2012) (citations omitted).

As explained above, the ALJ's assessment of Plaintiff's limitations is proper and well-supported by the record. The ALJ explained that if Plaintiff had the RFC for the full

range of sedentary work, a finding of "not disabled," would be directed and because the additional limitations included in the RFC have little or no effect on the occupational base for unskilled sedentary work, a finding of "not disabled" remains appropriate. (Dkt. 6 at 30). Because the ALJ did not assess limitations that significantly erode the occupational base for sedentary unskilled work, he was not required to rely on the testimony of a vocational expert. *See, e.g., Bombard-Senecal v. Commissioner*, No. 8:13-cv-649(GLS), 2014 WL 3778568, at *4 (N.D.N.Y. July 31, 2014) ("[B]ecause the ALJ determined that [the plaintiff] can perform the full range of unskilled light work that requires only occasional interaction with others and no climbing of scaffolds, his reliance on the Medical Vocational guidelines was appropriate."); *see also Mahon v. Colvin*, No. 13 Civ. 8817(AT)(KNF), 2015 WL 5697861, at *3 (S.D.N.Y. Sept. 28, 2015) ("Having concluded that Plaintiff's identified mental impairments 'have little or no effect on the occupational base of unskilled light work,' . . . ALJ Gonzalez properly relied on the medical vocational guidelines alone to determine Plaintiff's disability status."). Simply because Plaintiff believes the ALJ should have assessed additional non-exertional limitations does not require the ALJ to consult a vocational expert. *See Guija v. Commissioner*, No. 16-CV-5605 (ENV), 2019 WL 4279425, at *7 (E.D.N.Y. Sept. 10, 2019) ("Case law in the Second Circuit holds that, after determining a claimant's residual functional capacity, an ALJ is not necessarily precluded from using the Grids exclusively at step five of the sequential evaluation process, even if the claimant complained about [a] non-exertional impairment."). Accordingly, remand is not required on this basis.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 25, 2024
        Rochester, New York